1  GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
   ROBERT A. GOODIN, State Bar No. 061302
2  email: rgoodin@gmssr.com
   FRANCINE T. RADFORD, State Bar No. 168269
3  email: fradford@gmssr.com
   KEITH E. JOHNSON, State Bar No. 202321
4  Email: kjohnson@gmssr.com
   505 Sansome Street, Suite 900
5  San Francisco, California 94111
   Telephone:   (415) 392-7900
6  Facsimile:   (415) 398-4321

7  Attorneys for Plaintiffs Daniel R. Michener, Alan M. Dunn, Charles
   D. Toy, Larry J. Austin, W. Denman Van Ness and Michael P.
8  Salucci

9

10                     UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12 DANIEL R. MICHENER, an individual,            No. C07 4960
   ALAN M. DUNN, an individual, CHARLES
13 D. TOY, an individual, LARRY J. AUSTIN,       COMPLAINT OF DEFENDANTS
   an individual, W. DENMAN VAN NESS, an         ALAN M. DUNN, DANIEL R.
14 individual, AND MICHAEL P. SALUCCI, an        MICHENER, CHARLES D. TOY,
   individual                                    LARRY J. AUSTIN, W. DENMAN VAN
15                                               NESS AND MICHAEL P. SALUCCI
                  Plaintiffs,                    AGAINST J. RICHARD
16                                               BLANKENSHIP
       v.
17                                               JURY TRIAL DEMAND
   J. RICHARD BLANKENSHIP, an individual
18
                  Defendant.
19

Complaint of Dunn, Michener, Toy, Austin, Van Ness and Salucci Against Blankenship

Plaintiffs Alan M. Dunn, Daniel R. Michener, Charles D. Toy, Larry J. Austin, W. Denman Van Ness and Michael P. Salucci ("Plaintiffs") complain against J. Richard Blankenship as follows:

### PARTIES

1. Plaintiff Alan M. Dunn is an individual residing in Washington, D.C.
2. Plaintiff Daniel R. Michener is an individual residing in California.
3. Plaintiff Charles D. Toy is an individual residing in Maryland.
4. Plaintiff Larry J. Austin is an individual residing in Virginia.
5. Plaintiff W. Denman Van Ness is an individual residing in California.
6. Plaintiff Michael P. Salucci is an individual residing in California.
7. Defendant J. Richard Blankenship is an individual residing in Florida, and is the managing member of GIA-GMI LLC, a Florida limited liability company and the Plaintiff in *GIA-GMI, LLC. v. Michener et al.*, U.S. District Court for the Northern District of California Case No. C 06-7949 SBA.

### JURISDICTION

8. This court has jurisdiction over this action under 28 U.S.C. § 1332 (diversity) in that the parties are citizens of different states and the matter in controversy exceeds the amount of $75,000.

### VENUE

9. Venue is proper in this Court in that a substantial part of the events or omissions giving rise to the claims occurred here.

### ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

10. On or about April 2, 2004, Blankenship became a Board member of GMI Capital Corporation ("GMICC"), a Delaware corporation formed to operate as a non-regulated finance company providing loans to small- to medium-size technology companies. Blankenship also served on the finance committee of GMICC's Board. At all times that Blankenship was a Board member of GMICC, he was also the managing member of GIA-GMI, LLC

11. Each of Plaintiffs was also a shareholder in GMICC, owning the following

-1-
Complaint of Dunn, Michener, Toy, Austin, Van Ness and Salucci Against Blankenship

shares in GMICC: Austin, 70,000 total shares; Dunn, 43,382 total shares; McWalters, 37,500 total shares; Michener, 237,500 total shares; Salucci, 75,000 total shares; Toy, 68,753 total shares; and Van Ness, 225,000 total shares.

12. During the month of January 2004, plaintiff Dunn and Blankenship were engaged in a separate business enterprise involving the financing of projects unrelated to GMICC. In the course of meetings and other communications in the context of the separate enterprise, Blankenship held himself out to be a wealthy and sophisticated investor with a CPA and considerable experience in finance, including working for Price Waterhouse.

13. In or about January 2004, Blankenship and plaintiff Dunn were engaged in a financial project unrelated to GMICC. In the course of this project, Blankenship expressed interest in investing and structuring financial deals with Dunn. Because Blankenship represented that he had substantial assets to invest, Dunn suggested that Blankenship investigate the opportunity to make an equity investment in GMICC, a start-up enterprise in which Dunn had himself made an equity investment.

14. In or about January 2004, Dunn, together with plaintiff Michener, who was also an investor in GMICC, explained to Blankenship the process by which GMICC hoped to succeed in its business, which involved obtaining other equity investments in that would enable GMICC's Asia subsidiary ("GMIA") to qualify for a loan from the Overseas Private Equity Corporation ("OPIC"), such that the equity investments and OPIC loan would enable GMICC to pursue its business plan of making loans through foreign subsidiaries such as GMIA to small- and medium-size technology companies.

15. In or about January 2004, Dunn discussed with Blankenship the possibility of Blankenship making a Series B equity investment in GMICC in the range of $1.5 million. Blankenship suggested that instead, he should give GMICC a short-term "bridge" loan with the option to convert the debt into stock in GMICC. In an email dated January 9, 2004, Blankenship indicated to Dunn "…I think GMICC would be better off with a bridge loan with convertible features rather than a Series B issue." In an email dated January 13, 2004, Blankenship indicated, "…m[y plan] . . . is better since GIA will step up and buy what appears to be the entire

-2-
Complaint of Dunn, Michener, Toy, Austin, Van Ness and Salucci Against Blankenship

1  outstanding amount of the second issue." In the same email, Blankenship stated "…with my
2  financials background…I can bring more to the table with experience dating back to 1971. I
3  would like to serve somewhere on the board."

4      16.    Subsequently, in an email from Blankenship to Dunn dated January 12
5  2004, confirming his interest in investment in GMICC, Blankenship stated that, "We have funds
6  in hand."

7      17.    Blankenship subsequently suggested that the bridge loan to GMICC which
8  he proposed should be in the form of a loan from a special purpose entity that Blankenship would
9  create and fund, which entity was to be known as GIA-GMI, LLC. Blankenship would be the
10 managing member of GIA-GMI, LLC, and the entity would have the purpose of serving as the
11 conduit for Blankenship's loan. Blankenship reiterated his prior representations to Michener and
12 Dunn that he would cause GIA-GMI, LLC to convert the loan into stock in GMICC prior to the
13 maturity date for the loan.

14     18.    On or about February 6, 2004, GMICC issued a convertible secured note
15 (the "Note") to GIA-GMI, LLC by which GMICC promised to pay GIA-GMI, LLC sums
16 advanced to GMICC by GIA-GMI, LLC up to the amount of $750,000, together with accrued
17 interest thereon. The Note gave GIA-GMI, LLC the right to convert all or any part of the
18 outstanding principal balance of GIA-GMI, LLC's loan to GMICC into fully paid shares of
19 GMICC under the terms stated in the Note (the "conversion rights").

20     19.    On or about February 6, 2004, simultaneously with execution of the Note,
21 Blankenship told Plaintiffs in an email that, "Funds that will come through Global Investment
22 Advisors, LLC [to GMICC] are from the following sources (1) Kandra L. Jones, D.V.M., P.A.
23 Pension Plan - $224,000; (2) Kandra L. Jones, D.V.M., P.A. Profit Sharing Plan - $55,000; (3) J.
24 Richard and Kandra L. Blankenship - $221,000." Because this email was copied to
25 Blankenship's legal counsel at Foley & Lardner, whom Plaintiffs were informed and believe
26 represented the Pension Plan and Profit Sharing Plan, Plaintiffs believed that Blankenship was
27 authorized to direct the investment of monies from these entities in GMICC.

28     20.    During the period from February 2004 to June 2004, Blankenship caused to

-3-
Complaint of Dunn, Michener, Toy, Austin, Van Ness and Salucci Against Blankenship

be transferred to GMICC the total sum of $750,000 pursuant to the Note, as follows: on or about February 6, 2004, GMICC received three wire transfers totaling $500,100, consisting of $224,000 from the Kandra L. Jones DVM PA Money Purchase Pension Plan; $55,000 from the Kandra L. Jones DVM PA Profit Sharing Plan; and $221,100 from the Blankenship Family Trust (collectively, the "Pension and Trust Entities"); on or about May 24, 2004, an additional wire for $9,900 was remitted to GMICC from one or more of the Pension and Trust Entities; and on or about June 22, 2004 an entity called USRE Consortium wire transferred $240,000 to GMICC. In addition, on or before August 2004, Blankenship sold $100,000 participation in the Note to AMDE, LLC, the proceeds of which Blankenship failed to remit to the other participants in the Note as was required by their respective participation agreements.

21. Plaintiffs are informed and believe, and based thereon allege, that Blankenship directed funds from the Pension & Trust Entities to GMICC to be credited as loan proceeds from GIA-GMI, LLC, and obtained a participation agreement from USRE Consortium, under which the latter entity purchased a share in the Note from Blankenship and transferred funds directly to GMICC, again to be credited as loan proceeds from GIA-GMI, LLC.

22. As of September 1, 2004, GMICC had not achieved its goal of obtaining financing from OPIC, and accordingly, was greatly in need of additional cash. A major obstacle towards attracting new investment in GMICC was GMICC's liability to GIA-GMI, LLC on the Note. Accordingly, Plaintiffs discussed with Blankenship the possibility of GIA-GMI, LLC's exercising its rights under the Note to convert its debt into stock in GMICC, as he had previously represented he would do. Blankenship resigned from the Board of GMICC while these discussions were held.

23. On or about October 19, 2004, Blankenship re-joined the Board of GMICC, and on or about October 27, 2004, Blankenship told Plaintiffs that he would cause GIA-GMI, LLC to convert its debt into stock in GMICC, enabling GMICC to restructure. The parties contemplated that GMICC would enter into an asset purchase agreement with a new LLC, whose members would consist of certain shareholders in GMICC, including Blankenship, Austin, Dunn, McWalters, Michener, Salucci, Toy, and Van Ness, and that GMICC would dissolve.

-4-

Complaint of Dunn, Michener, Toy, Austin, Van Ness and Salucci Against Blankenship

24. On or about October 27, 2004, Blankenship executed a written agreement on behalf of GIA-GMI, LLC by which GIA-GMI, LLC agreed that the principal amount of the Note of $750,000 would be converted into 1,609,118 shares of GMICC common stock at a conversion price of $0.47 per share, with accrued interest thereon converted to 95,459 share of common stock at a price of $0.47 per share.

25. On or about October 19, 2004, Blankenship was reappointed to the GMICC Board, and then and thereafter fully participated in GMICC Board meetings. Blankenship also resumed his membership on the Board's finance committee. From his position on the finance committee and then as a member of the Board, Blankenship approved of agreements reached with vendors and creditors of GMICC in contemplation of the promised conversion of the Note, the asset purchase agreement, and GMICC's dissolution. Blankenship also recommended that the asset purchase agreement be structured so as to include goodwill, which could be applied to the capital accounts of the unit holders of the LLC, including Blankenship, giving them a larger tax write-off for the tax year 2004. Blankenship indicated that since the Pension and Trust Entities were tax-exempt entities that he would apply their share of the tax shelter to his personal taxes. GMICC obtained legal advice with respect to Blankenship's proposal for tax treatment of GMICC's goodwill, which was discussed at a GMICC board meeting attended by Blankenship.

26. Blankenship voted in favor of a Board resolution dissolving GMICC, and confirmed his approval of dissolution by email on December 30, 2004.

27. In reliance on Blankenship's representations that he would cause GIA-GMI, LLC to convert its debt into stock in GMICC, in or about October and November 2004, Plaintiffs contributed additional funds totaling over $100,000 to GMICC to pay its operating expenses.

28. On or about January 13, 2005, Blankenship caused GIA-GMI, LLC to declare the Note in default, having refused to perform his promise to cause the entity to convert its debt into stock in GMICC.

-5-

Complaint of Dunn, Michener, Toy, Austin, Van Ness and Salucci Against Blankenship

## FIRST CLAIM FOR RELIEF
### Negligent Misrepresentation

29. Plaintiffs incorporate the allegations of paragraphs 1-28 above.

30. In or about October 2004, Blankenship represented to Plaintiffs that he would cause the Note to be converted to stock in GMICC, rendering GIA-GMI, LLC a shareholder rather than a creditor of GMICC, and enabling GMICC to continue to pursue its business plan and realize the profits hoped for by its investors.

31. The representations made by Blankenship were in fact false. The true facts were that Blankenship did not intend to cause the Note to be converted into stock in GMICC, because he was not authorized by GIA-GMI LLC or the Pension and Trust Entities to do so, and he feared that by converting the Note to stock in GMICC, he would expose himself to personal liability for breach of trust.

32. When Blankenship represented to Plaintiffs that he would convert the Note to stock in GMICC, he had no reasonable ground for believing such representations to be true. Blankenship made these representations in order to induce Plaintiffs to act in reliance on these representations by investing further funds in GMICC.

33. Plaintiffs, at the time these representations were made by Blankenship and at the time Plaintiffs invested additional monies in GMICC, were ignorant of the falsity of Blankenship's representations and believed them to be true. In reliance on these representations, Plaintiffs were induced to and did act as set forth above. Had Plaintiffs known the actual facts, they would not have so acted. Plaintiffs' reliance on Blankenship's representations was justified because Blankenship signed a writing on behalf of the Noteholder stating its intention to convert the Note to stock in GMICC.

34. As a proximate result of the negligent misrepresentations of Blankenship as herein alleged, Plaintiffs were damaged in an amount to be determined according to proof at trial.

## SECOND CLAIM FOR RELIEF
### Intentional Misrepresentation

35. Plaintiffs incorporate the allegations of paragraphs 1-28 above.

-6-
Complaint of Dunn, Michener, Toy, Austin, Van Ness and Salucci Against Blankenship

36. In or about October 2004, Blankenship represented to Plaintiffs that he would cause the Note to be converted to stock in GMICC, rendering GIA-GMI, LLC a shareholder rather than a creditor of GMICC, and enabling GMICC to continue to pursue its business plan and realize the profits hoped for by its investors.

37. The representations made by Blankenship were in fact false. The true facts were that Blankenship did not intend to cause the Note to be converted into stock in GMICC, because he was not authorized by GIA-GMI LLC or the Pension and Trust Entities to do so, and he feared that by converting the Note to stock in GMICC, he would expose himself to personal liability for breach of trust.

38. When Blankenship represented to Plaintiffs that he would convert the Note to stock in GMICC, he knew that such representations were false. Blankenship made these representations in order to induce Plaintiffs to act in reliance on these representations by investing further funds in GMICC.

39. Plaintiffs, at the time these representations were made by Blankenship and at the time Plaintiffs invested additional monies in GMICC, were ignorant of the falsity of Blankenship's representations and believed them to be true. In reliance on these representations, Plaintiffs were induced to and did act as set forth above. Had Plaintiffs known the actual facts, they would not have so acted. Plaintiffs' reliance on Blankenship's representations was justified because Blankenship signed a writing on behalf of the Noteholder stating its intention to convert the Note to stock in GMICC.

40. As a proximate result of the intentional misrepresentations of Blankenship as herein alleged, Plaintiffs were damaged in an amount to be determined according to proof at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Blankenship as follows:

1. For compensatory damages against Blankenship according to proof at trial;

2. For interest on all sums awarded as compensatory damages, calculated at the highest legal rate from the earliest possible date;

-7-

Complaint of Dunn, Michener, Toy, Austin, Van Ness and Salucci Against Blankenship

3. For attorneys' fees and costs incurred in connection with this action if, and to the fullest extent, permitted by law;

4. For the imposition of such interim and permanent constructive or other trusts, equitable liens or other relief as may be necessary or appropriate to protect the interests of Plaintiffs during the pendency of this action and thereafter; and

For such other and further relief as this Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand that the claims made in this complaint be tried to a jury.

Dated: September 25, 2007

Respectfully submitted,

GOODIN, MACBRIDE, SQUERI,
DAY & LAMPREY, LLP
Francine T. Radford

By _____
Francine T. Radford
Attorneys for Plaintiffs Daniel R. Michener,
Alan M. Dunn, Charles D. Toy, Larry J. Austin,
W. Denman Van Ness and Michael P. Salucci

3291/001/X92910.v1

GOODIN, MACBRIDE, SQUERI, DAY & LAMPREY, LLP
ATTORNEYS AT LAW
SAN FRANCISCO

-8-
Complaint of Dunn, Michener, Toy, Austin, Van Ness and Salucci Against Blankenship